DATE FILED: April 4, 2023 2:31 PM
FILING ID: 8008A0E5F79F8
CASE NUMBER: 2023CV30234

| | |
|---|---|
| DISTRICT COURT, COUNTY OF BOULDER, COLORADO<br>1777 Sixth Street, Boulder, Colorado 80302 | |
| Plaintiff:<br>**BRIAN WRIGHT**<br><br>v.<br><br>Defendant:<br>**LM GENERAL INSURANCE COMPANY d/b/a LIBERTY MUTUAL INSURANCE** | ▲ COURT USE ONLY ▲ |
| **ATTORNEYS FOR PLAINTIFF:**<br>Name:       Jessica B. Prochaska, Reg. No. 46319<br>                  Elizabeth N. Torma, Reg. No. 58171<br>Address:    Burg Simpson Eldredge Hersh & Jardine, P.C.<br>                  40 Inverness Drive East<br>                  Englewood, Colorado, 80112<br>Phone No.: (303) 792-5595<br>Fax No.:     (303) 708-0257<br>E-Mail:       jprochaska@burgsimpson.com<br>                  ltorma@burgsimpson.com | Case No:<br><br>Div: |
| **COMPLAINT AND JURY DEMAND** | |

     COMES NOW, Plaintiff Brian Wright, by and through his attorneys, BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C., for his Complaint and Jury Demand, states, alleges, and avers as follows:

## PARTIES

1. Plaintiff Brian Wright (hereinafter "Plaintiff Wright") is a citizen and resident of Douglas County, Colorado, residing at 10077 Brisbane Way, Highlands Ranch, Colorado 80130.

2. Defendant LM General Insurance Company d/b/a Liberty Mutual Insurance (hereinafter "Liberty Mutual") is a foreign corporation licensed to do business in the state of Colorado with its principal place of business at 2815 Forbs Avenue, Suite 200, Hoffman Estates, Illinois 60192. Defendant Liberty Mutual maintains a registered agent in Colorado at 1900 W. Littleton Blvd., Littleton, Colorado 80120.

1

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this action pursuant to the Constitution of the State of Colorado, Article VI, Section 9.

4. The Court has personal jurisdiction over the Defendant Liberty Mutual by virtue of the Defendant's operations and presence in Colorado, by its transacting business in or directed at Colorado, by its commission of a tortious act that caused injury and damages in Colorado, and/or by otherwise purposefully availing itself of the benefits and privileges of Colorado law by regular, continuous and systematic contacts with Colorado, and by its commission of tortious acts that caused injury and damages in Colorado to a Colorado resident, pursuant to C.R.S. §13-1-124(1).

5. Venue is proper in this Court, pursuant to C.R.C.P. 98(c)(1) because Defendant Liberty Mutual is a nonresident of the State, Defendant conducts business in Boulder County, and Boulder is the County designated in this Complaint.

## GENERAL ALLEGATIONS

6. On or about March 7, 2019, at approximately 9:29 p.m., Plaintiff Wright was the restrained driver of a 2015 Audi Q3 traveling westbound on Lincoln Avenue in the number two left lane, approaching the intersection with Jefferson Parkway in Lone Tree, Colorado.

7. At or about that same time and place, Ms. Cherie Barmann was driving a 2015 Nissan Rogue traveling eastbound on Lincoln Avenue in the single left turn lane for northbound Jefferson Parkway in Lone Tree, Colorado.

8. At or about that same time and place, Ms. Barmann failed to yield the right of way to Plaintiff and proceeded to make a left turn through the intersection.

9. Ms. Barmann struck Plaintiff Wright's vehicle on the driver's side, causing Mr. Wright's vehicle to crash into the traffic signal light pole at the northwest corner of the intersection.

10. Both vehicles sustained significant damage, and Plaintiff Wright's vehicle had to be towed from the scene.

11. Witnesses reported that Plaintiff Wright's vehicle was proceeding through the intersection with a green light when Ms. Barmann's vehicle struck the his vehicle on the left side and fled the scene into a nearby apartment complex.

12. Following the collision, Ms. Barmann was cited with multiple traffic violations, including C.R.S. § 42-4-1301, Driving under the influence of alcohol, drugs, or both; a citation for C.R.S. § 42-4-1402, Careless driving resulting in bodily injury; a citation for C.R.S. § 42-4-1601, Failed to remain at scene after accident involving injury; a citation for C.R.S. §

2

       42-4-1603, Failed to provide information or aid after accident involving serious injury; and a citation for C.R.S. § 42-4-1606, Failed to notify police of an accident.

13. As a direct and proximate result of the collision, Plaintiff suffered serious bodily injury and trauma including, but not limited to, a concussion, headaches, whiplash, neck pain, mid-back pain, lower back pain, tingling and numbness in both hands and feet, pain in the right thigh, bilateral knee pain, and bilateral ankle sprains.

14. As a direct and proximate result of the collision, Plaintiff has suffered economic losses and damages including, but not limited to, past and future lost wages, past and future medical expenses, and past and future out of pocket expenses.

15. As a direct and proximate result of the collision, Plaintiff has suffered non-economic damages including, but not limited to, past and future pain, suffering, inconvenience, emotional distress, and impairment of the quality of life.

16. As a direct and proximate result of the collision, Plaintiff has sustained damages for physical impairment and disfigurement.

17. At the time of the incident, Ms. Barmann was insured by Progressive Direct Insurance Company for $25,000.00 in bodily injury coverage.

18. At the time of the incident, Plaintiff Wright was insured by Liberty Mutual for underinsured motorist coverage.

19. Prior to the March 7, 2019 collision, Plaintiff entered into a contract with Liberty Mutual, Policy Number AOS-298-154390-40 (herein after "the Policy"), which was in full force and effect at the time of the March 7, 2019 collision.

20. The Policy provides underinsured motorist coverage (hereinafter "UIM") to Plaintiff in the amount of $250,000.00.

21. Plaintiff purchased underinsured motorist coverage with Liberty Mutual in order to have security and protection in the event he was injured by an underinsured motorist.

22. Plaintiff timely notified Liberty Mutual of the incident and of the underinsured motorist claim.

23. On August 14, 2019, Plaintiff notified Defendant Liberty Mutual of his representation and requested certified copies of any and all policies and coverage.

24. On April 29, 2021, Plaintiff sent a letter to Defendant Liberty Mutual notifying it that Ms. Barmann's policy with Progressive had a liability policy limit of $25,000.00 and that Plaintiff anticipated the policy limits would be offered in the near future. Plaintiff also

requested Liberty Mutual's consent to settle the claims against Ms. Barmann for the policy limits.

25. On May 7, 2021, Defendant Liberty Mutual sent a letter acknowledging receipt of Plaintiff's letter of representation and stated it would forward Plaintiff's declarations page. Liberty Mutual also requested a recorded statement from Plaintiff and provided a medical release.

26. On May 18, 2021, Defendant Liberty Mutual pre-emptively provided Plaintiff with consent to settle the bodily injury claim for the liability policy limits.

27. On June 11, 2021, Ms. Barmann's liability insurance carrier offered her liability insurance policy limit and stated it was investigating potential additional coverage through Ms. Barmann's parents' automobile insurance policy.

28. On July 2, 2021, Ms. Barmann's liability insurance carrier notified Plaintiff that Ms. Barmann's parents' insurance policy did not provide coverage for the collision.

29. On July 12, 2021, Ms. Barmann's liability insurance carrier offered a personal contribution from Ms. Barmann in the amount of $10,000.00 in addition to the offer of liability policy limits.

30. On July 22, 2021, Plaintiff notified Defendant Liberty Mutual that the liability insurance carrier for Ms. Barmann offered her liability insurance policy limits, with an additional $10,000.00 personal contribution from Ms. Barmann. Plaintiff requested Liberty Mutual's consent to settle for the total settlement of $35,000.00.

31. On July 22, 2021, Defendant Liberty Mutual provided its consent to settle and stated the full $35,000.00 liability settlement would be applied as an offset to any UIM claim.

32. On March 29, 2022, Plaintiff sent a letter to Defendant Liberty Mutual requesting its evaluation of Plaintiff's claim for underinsured motorist coverage and provided supporting documentation.

33. On April 20, 2022, Defendant Liberty Mutual sent a letter to Plaintiff via fax stating after a review of Plaintiff's medical records and bills, it was tendering $123,639.00 in UIM benefits. Liberty Mutual also requested additional documentation related to Plaintiff's claim and requested a recorded statement.

34. On April 28, 2022, Plaintiff sent a letter via email and fax to Defendant Liberty Mutual containing the information requested in Liberty Mutual's April 20, 2022 letter and also requested an updated evaluation of Plaintiff's claim. Plaintiff also completed Liberty Mutual's requested recorded statement that day.

35. On May 2, 2022, Defendant Liberty Mutual sent a letter to Plaintiff acknowledging receipt of Plaintiff's April 28, 2022 letter and stated it was tendering an additional $8,538.33. Liberty Mutual also explained that it previously tendered $73,639.00 and advanced $50,000.00 for "the generals."

36. On May 13, 2022, Plaintiff sent a letter via email and fax to Defendant Liberty Mutual renewing his request for an updated evaluation of Plaintiff's claim as Liberty Mutual was undervaluing Plaintiff's non-economic damages such as his pain and suffering. Plaintiff requested that Liberty Mutual provide a full breakdown and explanation of the allocation of the offer in the event that its offer remained less than the policy limits. Plaintiff also provided Defendant Liberty Mutual with a signed Medical Records Authorization form.

37. On May 27, 2022, Defendant Liberty Mutual sent a letter to Plaintiff stating it tendered $117,177.33 for past medical expenses, out of pocket expenses, event costs, and lost wages. Liberty Mutual also stated it valued "the generals" at $50,000.00, and that it issued a total of $132,177.33 in UIM benefits. Liberty Mutual failed to provide a full breakdown of its allocation of benefits for non-economic damages. Liberty Mutual offered $15,000.00 as "new money" for full and final settlement of Plaintiff's UIM claim.

38. On July 5, 2022, Plaintiff sent a letter via email and fax to Defendant Liberty Mutual detailing Plaintiff's continued pain and suffering, ongoing medical treatment, and his potential need for surgery. Plaintiff provided documentation of these additional medical records and medical expenses and again requested that Liberty Mutual re-evaluate Plaintiff's UIM claim given the additional information. For the second time, Plaintiff again requested that Liberty Mutual provide a full breakdown and explanation of the allocation of its offer.

39. On July 13, 2022, Defendant Liberty Mutual sent a letter acknowledging receipt of Plaintiff's July 5, 2022 letter with supporting documentation. Liberty Mutual stated it would tender an additional payment for the recent medical bills, but incorrectly claimed that Plaintiff said he did not have any future medical appointments planned. Liberty Mutual again failed to provide a full breakdown and explanation of the allocation of its offer for non-economic damages.

40. On July 21, 2022, Plaintiff sent a letter via email and fax to Defendant Liberty Mutual detailing how Plaintiff discussed his need for future treatment and for potential future surgery in the recorded statement. Plaintiff also explained that Liberty Mutual was improperly withholding benefits for future treatment, as such treatment was clearly necessary, as detailed in Plaintiff's medical records and recorded statement. Plaintiff also informed Liberty Mutual that it failed to properly evaluate Plaintiff's pain and suffering, and entirely failed to allocate any benefits for Plaintiff's physical impairment. For the third time, Plaintiff again requested that Liberty Mutual provide its allocation for Plaintiff's future medical expenses, past and future pain and suffering, and his physical impairment.

41. On July 27, 2022, Defendant Liberty Mutual sent a letter to Plaintiff stating it would tender benefits for the latest medical bills, but refused to update its allocation for Plaintiff's pain and suffering or physical impairment. Liberty Mutual also stated it did not see that Plaintiff had a surgery scheduled and further said it was reserving its right for a medical examination.

42. On September 1, 2022, Plaintiff sent a letter via email and fax to Defendant Liberty Mutual stating Liberty Mutual should not refuse to provide Plaintiff with his benefits simply because the surgery is not scheduled, as his medical records clearly show his ongoing need for medical treatment and surgery candidacy. Plaintiff again explained that Defendant Liberty Mutual was repeatedly failing to properly and reasonably evaluate Plaintiff's UIM claim, despite the medical records detailing Plaintiff's ongoing medical treatment for his injuries sustained in the collision. Plaintiff again renewed his request for a re-evaluation and for the fourth time, requested an explanation of how Liberty Mutual's "general damages" allocation was determined.

43. On September 7, 2022, Defendant Liberty Mutual sent a letter to Plaintiff that failed to provide an updated evaluation of Plaintiff's UIM claim, nor did it provide an explanation of its "general damages" allocation. Instead, Liberty Mutual stated it was now requiring a medical examination of Plaintiff.

44. On September 12, 2022, Plaintiff sent a letter via email and fax to Defendant Liberty Mutual questioning why Liberty Mutual waited over five months to request a medical examination and reminding it of its obligation of good faith and fair dealing to its insured. Plaintiff requested available dates for the examination and the name and address of Liberty Mutual's chosen physician.

45. On September 19, 2022, Defendant Liberty Mutual sent an email to Plaintiff stating the name of the examining physician, Dr. Alicia Feldman, and the location of the appointment. Defendant Liberty Mutual further stated it was working on getting proposed dates for the examination.

46. On September 20, 2022, Plaintiff sent a letter via email and fax to Defendant Liberty Mutual regarding Liberty Mutual's chosen examining physician. Plaintiff expressed concerns about Dr. Feldman based on numerous negative patient reviews stating she makes up her mind about patients before seeing them and does not listen to or care about her patients, among other negative reviews. Plaintiff stated Liberty Mutual was not acting in its insureds best interests by selecting this physician and asked it to reconsider its choice.

47. On September 21, 2022, Defendant Liberty Mutual sent an email to Plaintiff which failed to address Plaintiff's concerns about Liberty Mutual's chosen physician and rather stated proposed examination dates were forthcoming.

48. On November 12, 2022, Plaintiff attended Liberty Mutual's medical examination with Dr. Feldman.

49. On November 28, 2022, Plaintiff sent a letter to Defendant Liberty Mutual requesting an updated evaluation of Plaintiff's UIM claim. For the fifth time, Plaintiff requested that Liberty Mutual include a breakdown of its allocation for Plaintiff's future surgery expenses, past pain and suffering, and his ongoing pain and suffering.

50. On November 29, 2022, Defendant Liberty Mutual sent a letter to Plaintiff stating its evaluation of Plaintiff's UIM claim did not change based on Dr. Feldman's medical examination report. Defendant Liberty Mutual claimed the report stated Plaintiff's medical treatment past September of 2019 was for his pre-existing conditions.

51. On February 9, 2023, Plaintiff sent a letter via email and fax to Defendant Liberty Mutual clarifying information within Dr. Feldman's medical examination report. Plaintiff noted the report stated Plaintiff continued to experience neck pain, occasional headaches, and knee and ankle pain when using stairs. Plaintiff further noted that Dr. Feldman did not fully answer several questions within the report and had contradictory findings. For the sixth time, Plaintiff again requested a breakdown of the $50,000.00, as Liberty Mutual still had not responded to Plaintiff's inquiry.

52. On February 24, 2023, Defendant Liberty Mutual sent a letter to Plaintiff stating its evaluation remained the same. Defendant Liberty Mutual again failed to respond to Plaintiff's requests for information regarding the evaluation.

53. Based on the extent of Plaintiff's injuries and damages, a reasonably careful insurance company, including Defendant Liberty Mutual, would issue payment of the full UIM policy limit of $250,000.00 to Plaintiff for his claim for underinsured motorist benefits.

54. On information and belief, Defendant Liberty Mutual has failed to reasonably evaluate all aspects of Plaintiff's claim, and in turn has failed to evaluate and pay reasonable underinsured motorist benefits to Plaintiff.

**FIRST CLAIM FOR RELIEF**
(Underinsured Motorist Claim/Breach of Contract against Liberty Mutual)

55. Plaintiff incorporates the allegations set forth above as though fully set forth herein.

56. Plaintiff is entitled to recover his underinsured motorist benefits as provided in his insurance policy with Defendant Liberty Mutual.

57. Prior to the March 7, 2019 collision, Plaintiff entered into a contract for insurance as identified herein; whereby, Defendant Liberty Mutual provided UIM coverage to Plaintiff

7

        and promised to pay UIM benefits to Plaintiff in exchange for Plaintiff's payment of premiums.

58. At the time of the March 7, 2019 collision, Defendant Liberty Mutual insured Plaintiff for $250,000.00 in UIM benefits pursuant to the Policy.

59. Defendant Liberty Mutual has breached its contract of insurance by failing to pay a reasonable amount of UIM benefits that are owed to Plaintiff under the policy.

60. As a direct and proximate result of the damages sustained by Plaintiff in the March 7, 2019 collision, and as required by C.R.S. § 10-4-609 and Defendant Liberty Mutual's policy, and as a direct result of Defendant Liberty Mutual's breach of contract, Plaintiff has suffered damages and Defendant Liberty Mutual is liable to pay UIM benefits to Plaintiff to compensate him for him injuries, damages, and losses.

### SECOND CLAIM FOR RELIEF
(Common Law Bad Faith Breach of Insurance Contract against Liberty Mutual)

61. Plaintiff incorporates the allegations set forth above as though fully set forth herein.

62. Plaintiff entered into a contract for insurance as identified herein; whereby, Defendant Liberty Mutual provided underinsured motorist coverage to Plaintiff and promised to pay UIM benefits to Plaintiff in exchange for Plaintiff's payment of premiums.

63. Defendant Liberty Mutual acted willfully, wantonly, and unreasonably in failing to timely and reasonably pay all UIM benefits to Plaintiff arising from the injuries, damages, and losses sustained by Plaintiff in the March 7, 2019 collision and by continuing to delay and deny payment.

64. Defendant Liberty Mutual has refused to pay the full amount of Plaintiff's claim for underinsured motorist benefits without a reasonable basis.

65. Defendant Liberty Mutual acted unreasonably in handling Plaintiff's claim for underinsured motorist benefits in an unfair manner inconsistent with fair claims handling standards.

66. Defendant Liberty Mutual's conduct described herein was unreasonable and further violated C.R.S. § 10-3-1104(1)(h).

67. Defendant Liberty Mutual knew that its conduct described above was unreasonable or recklessly disregarded the fact that its conduct described above was unreasonable.

68. As a direct and proximate result of Defendant Liberty Mutual's bad faith conduct, Plaintiff has sustained injuries, damages, and losses.

### THIRD CLAIM FOR RELIEF
(Statutory Claim - Unreasonable Delay and Denial of Benefits Under
C.R.S. §§ 10-3-1115 and 10-3-1116)

69. Plaintiff incorporates the allegations set forth above as though fully set forth herein.

70. Plaintiff is a first party claimant as defined under C.R.S. § 10-3-1115.

71. Plaintiff Wright and Defendant Liberty Mutual entered into a contract for insurance as identified herein, whereby Defendant provided underinsured motorist coverage to Plaintiff, and promised to pay underinsured motorist benefits to Plaintiff, in exchange for payment of premiums.

72. Pursuant to C.R.S § 10-3-1115, Defendant Liberty Mutual cannot unreasonably delay or deny payment of underinsured motorist benefits to Plaintiff.

73. Defendant Liberty Mutual delayed and denied Plaintiff's claim for underinsured motorist benefits without a reasonable basis.

74. Defendant Liberty Mutual violated C.R.S. § 10-3-1115 by delaying and denying payment of underinsured motorist benefits it owes to Plaintiff for the injuries, damages and losses suffered in the March 7, 2019 collision without conducting a reasonable investigation and evaluation of Plaintiff's underinsured motorist claim.

75. Defendant Liberty Mutual violated C.R.S. § 10-3-1115 by delaying and denying payment of underinsured motorist benefits it owes to Plaintiff for the injuries, damages and losses suffered in the March 7, 2019, collision without providing a reasonable basis for its delay and denial.

76. Pursuant to C.R.S. § 10-3-1116, Plaintiff is entitled to recover reasonable attorney's fees, court costs and two times the covered benefits as a result of Defendant's unreasonable delay and denial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Wright prays for judgment against Defendant Liberty Mutual for relief as follows:

1. Benefits owed to Plaintiff for a breach of contract under the policies of insurance issued by Defendant Liberty Mutual for Plaintiff's economic damages, including but not limited to, past and future medical expenses, lost income, lost earning capacity, and out-of-pocket expenses; non-economic damages, including but not limited to, pain and suffering, loss of enjoyment of life, mental and emotional distress and anguish, and inconvenience; and

physical impairment and disfigurement; all of which in an amount to be determined at trial;

2. Damages for common law bad faith;

3. Statutory damages as provided by C.R.S. § 10-3-1116, including costs, attorney's fees, and two times the covered benefits;

4. All other compensatory damages caused by Defendants' actions and inactions, to be proven at trial;

5. Pre-judgment and post-judgment interest as provided by law; and

6. For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff Brian Wright hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 4th day of April, 2023.

**BURG SIMPSON
ELDREDGE HERSH & JARDINE, P.C.**
*(Original signature on file at Burg Simpson Eldredge Hersh & Jardine, P.C.)*

*/s/ Jessica B. Prochaska*
Jessica B. Prochaska, Reg. No. 46319
Elizabeth N. Torma, Reg. No. 58171
*Attorneys for Plaintiff*

**Plaintiff's Address**
c/o Burg Simpson, P.C.
40 Inverness Drive East
Englewood, CO 80112

10